**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **REBECCA CABALLERO, ET AL** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 09-3012 |
| | * | |
| **TANGIPAHOA PARISH GOVERNMENT, ET AL** | * | SECTION "B"(4) |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Rec. Doc. No. 20) seeking judgment dismissing Plaintiffs' claims under 42 U.S.C. § 1983, Plaintiffs' "stigma plus infringement" claim, and Plaintiffs' claim of race and sex discrimination under Title VII and La. R.S. 23:332. Plaintiffs have filed a memorandum in opposition to the instant motion at Rec. Doc. No. 28.

## I. CASE HISTORY

This action arises out of a series of events which took place in the Tangipahoa Parish Animal Control Office ("TPAC") between December 3, 2007 and August of 2008, ultimately resulting in Plaintiffs Sance, Caballero, and Pittman resigning from their positions and Plaintiff Hartmann being terminated.[1] (Rec. Doc. No. 1). The plaintiffs are four white females, one of whom is also hispanic, who were all employed by TPAC within the time period

---

[1] Plaintiffs, in their complaint, state that Plaintiff Sance resigned on June 13, 2008. (Rec. Doc. No. 1 at 23). Plaintiff Caballero resigned August 5, 2008. *Id*. at 39. And, although the complaint does not give an exact date, it does state that Plaintiff Pittmann resigned as well. *Id*. at 40. Defendants, in the instant motion, state that Plaintiff Pittmann resigned in August of 2008. (Rec. Doc. No. 20-2 at 2). Plaintiff Hartmann's employment was terminated on August 22, 2008. (Rec. Doc. No. 1 at 45).

1

outlined above; Plaintiffs are Rebecca Caballero, Mary Pittman, Racheal Sance, and Kathy Hartmann. All four plaintiffs claim race and sex discrimination by their black, male supervisor, Donald Dotey who they allege verbally harassed them and subjected them to a hostile work environment in violation of Title VII and La. R.S. 23:332. *Id*. at 52-54. Additionally, in the portion of Plaintiffs' amended complaint regarding the Title VII claim, Plaintiffs allege that they "belonged to a protected group; [sic] were subjected to harassment . . . motivated by discriminatory animus (race or gender); the harassment affected a term, condition, or privilege of plaintiffs' employment; the employer knew or should have known of the harassment; the employer failed to take proper remedial action." (Rec. Doc. No. 4 at 53-54).

Plaintiff Hartmann alleges deprivation of her constitutional right to procedural due process in her "stigma plus infringement" claim alleging that Defendants made false, stigmatizing charges against her publically in connection with her termination and that she requested a hearing to clear her name which Defendants denied her. *Id*. at 45-46, 55-56.

Plaintiffs Caballero, Pittman, and Hartmann all claim they were discharged because they did not support Parish President Burgess for re-election in November of 2007, in violation of their First Amendment right. Rec. Doc. No. 4 at 47-51.

Plaintiffs state that before the run-off election for Parish

2

President on November 17, 2007, then Assistant Director of Finance, Jeff McKneeley contacted the employees about signing a statement asking the public to re-elect Burgess which Plaintiffs Caballero, Hartman and Pittman refused to sign.  *Id*. at 5.  Plaintiff Sance did not begin work at TPAC until March of 2008 and thus does not join the her co-plaintiffs in this claim.  The statement ran in a local paper five days before the runoff election in which Burgess was reelected.  *Id*. at 5-7.  Plaintiffs allege that in January 2008 a number of Parish Government employees who signed the statement received pay raises while those who did not sign the statement "received lesser pay raises then those who supported Burgess." *Id*. at 6.  Plaintiffs also state that the "sole motivation for the termination of plaintiffs [sic] employment was to purge the Tangipahoa Parish Government of all employees who did not support the defendant Burgess' re-election campaign."  (Rec. Doc. No. 4 at 50).

Plaintiffs discuss an incident of mass euthanasia which took place at TPAC on August 4, 2008 at which time none of the Plaintiffs were present.  They allege that, approximately 172 animals were euthanized; Defendants in the instant motion state that "just over 170 animals were euthanized . . . ." *See* Rec. Doc. No. 4 at 36; Rec. Doc. No. 20-2 at 3.  This event is discussed in detail *infra*.

## II. CONTENTIONS OF THE PARTIES

A. MOVANTS' CONTENTIONS

In response to Plaintiffs Caballero and Pittman's claims that they were discharged in violation of their First Amendment right to support the political candidate of their choosing, Movants state that Plaintiffs Caballero and Pittman both "resigned in protest of the euthanasia" event.  (Rec. Doc. No. 20-2 at 3).

Movants allege that Plaintiff Caballero was not terminated but resigned in protest over the August 4, 2008 mass euthanasia and cites to Caballero's deposition in which she states "Well, the day of the mass euthanasia, that just did it for me" then, in response to counsel's question "So you decided to resign when the euthanasia happened?" Caballero responded "Right, uh-huh." (Rec. Doc. No. 20-5 at 6, ll 16-21).

Similarly, Movants state that Plaintiff Pittman "resigned [her] position[] in protest of the euthanasia . . . ." and was not terminated.  (Rec. Doc. No. 20-2 at 3).  Movants cite to Plaintiff Pittman's deposition at which, in response to the question ". . . You voluntarily resigned, correct?" Pittman responded "I did. I did." (Rec. Doc. No. 20-7 at 8 ll 20-22).  A short time later, in reference to the euthanasia event, Pittman states "No, I resigned after, right after, yes. That was the final straw for me." *Id* at 10 ll 4-6.

Movants then state that, although Plaintiff Hartmann was in fact terminated, it was not for her refusal to sign the statement

of support for President Burgess eight months earlier but due to "her deficient work record." (Rec. Doc. No. 20-2 at 9). Movants state that this "failure to carry out her job duties as kennel manager" included "her failure to maintain minimum cleanliness standards in the facility, continuously resisting directives from her supervisors concerning performance of her job, an inability to work effectively with her coworkers, and the presence of prescription and other drugs in the facility without adequate records documenting the source of the drugs, nor their reason for being present in the facility." (Rec. Doc. No. 20-1 at 1).

Movants point out that other employees that did not sign the statement of support for Burgess' reelection were not terminated and, although Movants do not address the amount of other employees' pay raises, does state that Plaintiffs received pay raises in January 2008. (Rec. Doc. No. 20-2 at 9).

In response to the claims of race and sex discrimination, Movants state that three white female employees were hired to replace the four plaintiffs, no replacement was hired to replace Plaintiff Sance's position as that position "was eliminated after [Sance's] resignation." (Rec. Doc. No. 20-1 at 2).

With regard to Plaintiffs' claims for a violation of Title VII due to a hostile work environment, Movants again reiterate that Plaintiffs Caballero and Pittman stated that they resigned due to the euthanasia incident and that Plaintiff Hartmann was fired due

5

to her failure to carry out the duties of her job. (Rec. Doc. No. 20-2 at 6). Movants state that Plaintiff Sance cannot prevail on a claim of discrimination unless she was constructively discharged and cites to Sance's deposition testimony in which she states that the resigned and returned to work at TPAC as a volunteer a short while later. *Id*. at 7 (citing Rec. Doc. No. 20-6 at 5-9).

Movants next argue that Plaintiff Hartmann's "stigma plus infringement" claim fails as they claim the statements made to the media "are true and are not defamatory." (Rec. Doc. No. 20-2 at 13). This argument will be addressed *infra*.

Lastly, Movants cite precedent to raise an affirmative defense for "employers that are subject to vicarious liability to an employee victimized by a hostile work environment created by a supervisor with immediate control over the employee." (Rec. Doc. No. 20-2 at 10-12) Movants state that the defense is applicable when no employment action has been taken and thus, Movants admit the defense is inapplicable to Plaintiff Hartmann as she was discharged. *Id*. at 10. Movants urge the defense is applicable to Plaintiffs Caballero, Pittman, and Sance as they were not terminated as Plaintiff Hartmann. *Id*. Movants argue that they must prove "(1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer

or to avoid harm otherwise." *Id*. They argue that the Tangipahoa Parish Personnel Manual sets forth the applicable grievance procedure that satisfies the first prong. They then state that the second prong is satisfied as Plaintiff Sance admitted in her deposition that she never filed a grievance and Plaintiffs Caballero and Pittman both resigned while "[t]he Parish was still actively investigating their grievances . . . ." *Id*. at 11.

B. RESPONDENTS' CONTENTIONS

Respondents first address Movants' arguments regarding the Title VII claim "due to a hostile work environment" and state that the Plaintiffs allege that cause of action "[s]eparate and apart from any claim in connection with termination of their employment." (Rec. Doc. No. 28 at 6).

In response to Movants' claims that Plaintiffs Caballero and Pittman "resigned in protest of the euthanasia" event, respondents state that those Plaintiffs stated in their depositions that they resigned due to a hostile work environment. Respondents cite to Caballero's deposition at which she states " . . . When Mr. [Donald] Dotey came, [TPAC] became a hostile work environment." (Rec. Doc. No. 28-8 at 2; citing Rec. Doc. 20-5 at 5 ll 17-19). Similarly, Respondents cite that portion of Pittman's deposition at which she states that she wrote in her resignation letter that TPAC was a "[h]ostile work environment, because, basically, that's --

that's how it was." (Rec. Doc. No. 28-8 at 2; citing Rec. Doc. No. 20-7 at 9-10).

With regard to Plaintiff Sance whom Movants state cannot maintain her claim concerning a hostile work environment as she returned to volunteer a short time after leaving, respondents cite to the portions of Sance's deposition at which she says she returned to TPAC only when she knew Mr. Doety would not be present. (Rec. Doc. No. 28-8 at 2).

Lastly, in response to Movants affirmative defense, Respondents cite case law to support the contention that the existence of a grievance procedure and a Plaintiff's failure to invoke that procedure does not necessarily protect a defendant from liability. (Rec. Doc. No. 28 at 6-7).

### III. LAW AND ANALYSIS

A.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the

nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B. TITLE VII AND LOUISIANA ANTI-DISCRIMINATION CLAIMS

Because plaintiffs have set forth minimally sufficient evidence that raises a genuine issue of fact as to the cause of Plaintiffs Caballero, Pittman and Sance's resignations, specifically whether those Plaintiffs resigned in protest of the August 4, 2008 mass euthanasia or due to a hostile work environment created in part by Donald Dotey, (*see* Rec. Doc. Nos. 20-5 & 20-7) summary judgment of Plaintiffs' claims based on discharge in violation of Title VII and Louisiana Antidiscrimination statutes is inappropriate at this time and must be **DENIED**.

Additionally, because plaintiffs have set forth minimally sufficient evidence that raises a genuine issue of fact as to the cause(s) of Plaintiff Hartmann's termination from TPAC, specifically whether Hartmann failed to perform the duties of her job and whether she mishandled drugs (*see* Rec. Doc. No. 28-1) summary judgment of Plaintiff Hartmann's claims for violations of Title VII and Louisiana Antidiscrimination law would be imprudent at this juncture and must be **DENIED**.[2]

C. STIGMA PLUS INFRINGEMENT

In *Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir.1993) a former Kerrville, Texas policeman filed suit against the city and three city officials claiming he was terminated in violation of his Constitutional rights to free speech and due process. Gillum "argue[d] that he was denied a name clearing hearing in violation of his due process right to work in a chosen profession." *Id*. at 121. The Fifth Circuit stated that the plaintiff must prove "(1) that he was discharged; (2) that defamatory charges were made against him in connection with the discharge; (3) that the charges were made public; (4) that the charges were false; (5) that he requested a hearing in which to clear his name; (6) that the

---

[2] Defendants note, in the instant motion, that their arguments regarding Plaintiffs' Title VII claims "apply with equal force to plaintiff's state law claims as Louisiana's antidiscrimination laws are patterned on the federal laws and interpreted accordingly. (Rec. Doc. No. 20-2 at 8).

request was denied; and (7) that no meaningful public hearing was conducted before the discharge." *Id*. (citing *Rosenstien v. City of Dallas*, 876 F.2d 392 (5th Cir.1989), *aff'd on relevant grounds*, 901 F.2d 62 (en banc)(per curiam)).

It is not disputed by the parties here that Plaintiff Hartmann was discharged.  Accordingly Plaintiff has set forth sufficient evidence that raises a genuine issue of fact as to whether the publicly made statements were defamatory and/or false, specifically whether the scheduled drugs were accounted for and what discrepancies in those drug logs were found. (*see* Rec. Doc. No. 28-1).

Movants state that "as a general rule government employees are at will employees and . . . . [a]n at will government employee who has been discharged has no claims whatsoever based in the Constitution." (Rec. Doc. No. 20-2 at 12 citing *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008)).  Movants further contend that "an at-will government employee has no property interest in his employment protected by the Fourteenth Amendment." *Id*. (citing *Bishop v. Wood*, 426 U.S 341 (1976).

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972) an assistant professor of political sciences at Wisconsin State University-Oshkosh filed suit when, after completion of his one year term, the University did not renew his

11

contract.  The Court found that the Plaintiff's property interest "was created and defined by the terms of his appointment" and found he had no property interest in employment beyond the one year term specified in his contract.  *Id*. at 578.  However, the Court differentiated the property interest from a liberty interest under the Due Process Clause of the Fourteenth Amendment.  *Id*. at 572-573.

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. In such a case, due process would accord an opportunity to refute the charge before University officials.

*Id*. at 573 (internal citations omitted).  Thus, as Plaintiff Hartmann has presented evidence to raise a genuine issue of fact regarding those issues discussed *supra* as well as whether she was an at will employee and whether there exists a protected interest which may have been violated, summary judgment of Plaintiff Hartmann's "stigma plus infringement" claim is hereby **DENIED**.

D.   FIRST AMENDMENT CLAIMS

The Supreme Court, in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 held:

> [I]n order to prevail in an action alleging discharge in retaliation for the exercise of First Amendment rights, a plaintiff has the burden of proving, first, that his conduct was constitutionally protected and second, that this conduct was a 'substantial or motivating' factor behind the discharge. Once the plaintiff has made this initial showing, the defendant may avoid liability if he can show by a preponderance of the evidence that [he] would have reached the same decision as to [terminating the plaintiff's employment] even in the absence of the protected conduct.

*Bueno v. City of Donna*, 714 F.2d 484, 489 (5th Cir.1983)(quoting *Mt. Healthy* 429 U.S. at 287)(internal quotations omitted).[3] Movants make no claim that Plaintiffs Caballero, Pittman, and Hartmann's conduct was not constitutionally protected, but argue solely that Plaintiffs are unable to prove that their decision not to sign the statement was a "substantial or motivating" factor behind the discharge. (Rec. Doc. No. 20-2 at 8). Primarily Movants repeat their statement that Plaintiffs Caballero and Pittman "voluntarily resigned in protest of the mass euthanasia" and point out that "the termination of employment of Caballero, Pittman, and Hartmann all occurred over eight (8) months after the parish president election, thus, the termination is an event too

---

[3]*See also Mullinax v. Texarkana Independent School Dist.*, 28 Fed.Appx. 917 (5th Cir.2002) stating that a plaintiff "must prove four elements to prevail on [a] First Amendment retaliation claim: (1) that she suffered an adverse employment action; (2) that her speech involved a matter of public concern; (3) that her interest in commenting on matters of public concern ... outweighed Defendant's interest in promoting efficiency; and (4) that her speech motivated the Defendant's action." (quoting *Harris v. Victoria Ind. School Dist.*, 168 F.3d 216, 220 (5th Cir.1999)).

far removed from the election to be caused by it." (Rec. Doc. No. 20-2 at 8-9).

In *Mullinax v. Texarkana Independent School Dist.*, 28 Fed.Appx. 917 (5th Cir.2002), the Fifth Circuit, discussing another First Amendment retaliation case, *Beattie v. Madison County School Dist.*, 254 F.3d 595 (5th Cir.2001) stated "even if the board had fired Beattie for retaliatory reasons, uncontroverted affidavits showing that it would have terminated her for other reasons . . . furnished independent grounds for affirming summary judgment." *Mullinax* 48 Fed.Appx. at *2.

While Virginia Baker, Personnel Director for Tangipahoa Parish, states several non-retaliatory reasons for Plaintiff Hartmann's termination in her "Statement in Lieu of Affidavits" made pursuant to 28 U.S.C. § 1746, those statements are not uncontroverted. (Rec. Doc. No. 20-3 at 2; *see also* Rec. Doc. No. 28-1). Additionally, as discussed *supra*, Plaintiffs Caballero and Pittman have put forth sufficient evidence to raise an issue of material fact regarding whether they resigned in protest of the mass euthanasia or whether a constructive discharge took place. Thus, despite Movants' contention that the approximate eighth month period between Burgess' reelection and "the termination of employment of Caballero, Pittman, and Hartmann" evidences *a priori* that Plaintiffs' protected conduct could not have been a

"substantial or motivating factor behind" their termination, this logic does not eradicate a genuine issue of fact. Accordingly, summary judgment of Plaintiffs' claims of political discrimination under the First Amendment is hereby **DENIED**.

E.   *ELLERTH/FARAGHER* AFFIRMATIVE DEFENSE

Movants cite *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) to support the proposition that, where an employer takes no employment action, an affirmative defense may be raised by an employer to shield themselves from vicarious liability arising from a hostile work environment "created by a supervisor with immediate control over the employee."[4] (Rec. Doc. No. 20-2 at 10). The Supreme Court in *Ellerth* stated:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any

---

[4]Movants acknowledge that both *Ellerth* and *Faragher* involved claims of sexual harassment by a supervisor, and cite case law to support the proposition that other circuit courts have held the *Ellerth/Faragher* affirmative defense applicable in the context of a Title VII claim involving a hostile work environment. (Rec. Doc. No. 20-2 at 10)(citing *Wright-Simmons v. The City of Oklahoma City*, 155 F.3d 1264 (10th Cir.1998); *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906 (8th Cir. 2003)).

> preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.

*Id*. at 765. Here, Movants discuss the Tangipahoa Parish Personnel Manual, stating that all Plaintiffs signed forms stating they had received and read a copy of the manual and the grievance procedure therein outlined. (Rec. Doc. No. 20-2 at 11; Rec. Doc. No. 20-3 at 3). Movants, however, do not reconcile their conclusion that, because of the contents of the manual Movants have satisfied the first prong of *Ellerth*/*Faragher* affirmative defense, with the Supreme Court's statement in the earlier case of *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

> [W]e reject petitioner's view that the mere existence of a grievance procedure and a policy against discrimination, coupled with respondent's failure to invoke that procedure, must insulate petitioner from liability. While those facts are plainly relevant, the situation before us demonstrates why they are not necessarily dispositive. Petitioner's general nondiscrimination policy did not address sexual harassment in particular, and thus did not alert employees to their employer's interest in correcting that form of discrimination.

*Meritor*, 477 U.S. at 72-73.

Although the instant action is not one involving sexual harassment, several relevant features are analogous to the case *sub*

*judice*. In *Meritor*, the Court stated that the employer's "grievance procedure apparently required an employee to complain first to her supervisor, in this case Taylor. Since Taylor was the alleged perpetrator, it is not altogether surprising that respondent failed to invoke the procedure and report her grievance to him. Petitioner's contention that respondent's failure should insulate it from liability might be substantially stronger if its procedures were better calculated to encourage victims of harassment to come forward." *Meritor*, 477 U.S. at 73.

Similarly, the Tangipahoa Parish Personnel Manual instructs employees to "first submit a written grievance on the approved grievance form to his Supervisor . . . ." (Rec. Doc. No. 20-3 at 10). The manual also states "any attempt by an employee to bypass a level of supervision in the grievance process shall be considered grounds for disciplinary action." *Id*. Additionally, the portions of the manual submitted show a general nondiscrimination policy that does not mention harassment in particular. As the *Meritor* Court said of the similar policy, it "did not alert employees to their employer's interest in correcting that form of discrimination." The Court's statement in *Meritor* coupled with the portions of the personnel manual submitted by movants, outlining the grievance procedure dispel Movants' contention that Plaintiffs Caballero, Pittmann and Sance "failed to take advantage of the

opportunity to resolve [her] problems by the procedure" in the manual.  (Rec. Doc. No. 20-2 at 12).  For these reasons, Movants' attempt to raise the *Ellerth*/*Faragher* affirmative is hereby **DENIED.**

## IV. CONCLUSION

For the reasons articulated above, Defendants' Motion for Summary Judgment (Rec. Doc. No. 20) is **DENIED.**

New Orleans, Louisiana, this 21ST day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE